IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MARIE FLORENCE LAGUERRE | CIVIL ACTION |
| v. | NO. 19-1405 |
| PEOPLE'S PROPERTY ADJUSTERS, LLC, et al. | |

MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.** August 22, 2019

I. **Introduction**

Plaintiff Marie Florence Laguerre alleges that property insurance adjusters, Defendants People's Property Adjusters, LLC of Pennsylvania ("People's-PA") and People's Property Adjusters, LLC of New Jersey ("People's-NJ") (together, "People's Property"), Robert R. Davis ("Davis"), and Darrell A. Jones ("Jones") (collectively, "Defendants"), violated state law by failing to distribute insurance proceeds due to Plaintiff after a fire damaged Plaintiff's real property in Philadelphia. The Complaint alleges six Counts:

1. **Count I**: Breach of the parties' Public Adjuster Contract against all Defendants;

2. **Count II**: Conversion of the insurance proceeds against all Defendants;

3. **Count III**: Breach of fiduciary duty against all Defendants;

4. **Count IV**: Participation theory against all Defendants based on the conduct of Defendant Davis;

5. **Count V**: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq. ("UTPCPL") against all Defendants; and

6. **Count VI**: Aiding and abetting against Defendant Jones.

Plaintiff seeks damages in excess of $75,000. Presently before this Court is Defendants' Motion to Dismiss all Counts of the Complaint for lack of subject matter jurisdiction under Federal

1

Rule of Civil Procedure 12(b)(1).

For the reasons discussed below, the Motion to Dismiss is held under advisement.

## II. Factual Background

Taking Plaintiff's allegations as true, the factual background is as follows. Plaintiff is a citizen of the Country of Haiti who resides in Port-au-Prince, Haiti. (Compl. ¶ 1.) Defendant People's-PA is a limited liability company registered with the Commonwealth of Pennsylvania. (Id. ¶ 2.) At all times relevant, People's-PA was registered by the Pennsylvania Insurance Department as a resident public adjusting agency. (Id. ¶ 4.) Defendant People's-NJ is a limited liability company registered with the state of New Jersey. (Id. ¶ 3.) At all times relevant, People's-NJ was registered by the New Jersey Department of Banking and Insurance as a domestic public adjusting agency. (Id. ¶ 5.) Defendant Davis, a citizen of New Jersey and a managing member of People's Property, was licensed both by the Pennsylvania Insurance Department as a non-resident public adjuster and by the New Jersey Department of Banking and Insurance as a domestic public adjuster. (Id. ¶¶ 7–8.) Defendant Jones, a citizen of Pennsylvania, was licensed by the Pennsylvania Insurance Department as a resident public adjuster but was denied a license by the New Jersey Department of Banking and Insurance. (Id. ¶¶ 9–11.)

On July 29, 2018, Plaintiff's residential real property located at 1123 Fillmore Street in Philadelphia, Pennsylvania was damaged by fire. (Id. ¶ 18.) At the time of the fire, Plaintiff was the named insured pursuant to an insurance policy executed by Allstate Insurance Company ("Allstate"). (Id. ¶ 19.) On the date of the fire, People's Property, by and through its employees, Jones and Davis, solicited Plaintiff to engage People's Property to provide public adjusting services under the terms and conditions contained in the Public Adjuster Contract. (Id. ¶ 20; id. Ex. A.)

The Public Adjuster Contract signed by Plaintiff and Jones provides that Plaintiff retained People's Property to assist in the adjustment of the insurance claim. (Id. Ex. A.)[1] Plaintiff agreed to pay People's Property, the "Public Adjuster," a contingent fee of 10% from each check issued by Allstate. (Id.) By signing the contract, Plaintiff requested and authorized Allstate to add People's Property as an additional payee on all checks pertaining to the fire loss. (Id.)

On or about July 31, 2018, Allstate, through its assigned field adjuster, inspected the damages to the Fillmore Street property caused by the fire. (Compl. ¶ 21.) In August 2018, the fire loss claim was settled through the offices of People's Property. (Id. ¶ 22.) Allstate tendered two separate checks payable to "People's Property Adjusters and Marie Florence Laguerre" totaling $66,738.98 for Plaintiff's insured losses and damages. (Id.) Allstate retained $8,757.22, which was the sum of recoverable depreciation totaling $6,822.22 and a $1,935.00 refundable security deposit. (Id. ¶ 23.) In total, the insurance proceeds paid and/or payable by Allstate to Plaintiff in accordance with the Allstate insurance policy amount to $75,496.20, exclusive of interest, statutory damages, and costs. (Id. ¶ 24.) Though Defendants knew that the fire loss claim was settled and that the insurance proceeds were tendered by Allstate, Davis and Jones knowingly and deliberately misrepresented the status of the claims adjustment process to deceive Plaintiff into believing that it was ongoing. (Id. ¶ 32.)

Despite Plaintiff's repeated demands, Defendants refused to pay Plaintiff any of the insurance proceeds. (Id. ¶ 25.) Instead, Defendants endorsed the checks and converted the proceeds for their exclusive use, enjoyment, possession, and control. (Id. ¶ 26.) In so doing, Defendants commingled the proceeds with the monies, accounts, and other funds belonging to

---

[1] The Court is unable to discern the date of execution or whether the "Notice of Right to Rescind or Cancel" the Contract was signed from the copy filed.

Defendants' clients and customers. (Id. ¶ 27.) As a result, Plaintiff and her family were deprived of the use of the Fillmore Street property, as Plaintiff could not use the proceeds paid by Allstate to repair the property. (Id. ¶ 28.) Plaintiff was forced to borrow more than $26,000.00 in October and November 2018 to repair the damage. (Id. ¶ 29.) Plaintiff also incurred other losses and expenses, including, but not limited to, the loss of the recoverable portion of the depreciation in the amount of $6,822.22 and the $1,9350.00 security deposit, which Allstate retained. (Id. ¶ 30.)

### III. Procedural History

Plaintiff filed the Complaint in this Court on April 3, 2019 (ECF 1). On May 8, 2019, Defendants filed a Pretrial Memorandum arguing that this Court lacks subject matter jurisdiction over the matter (ECF 6). On May 10, 2019, this Court ordered Defendants to refile the memorandum as a Motion to Dismiss in compliance with local rules (ECF 7).

Accordingly, Defendants filed the instant Motion to Dismiss on May 15, 2019 (ECF 8, "Mot."), which argues that the Complaint fails to plausibly allege that this Court has diversity jurisdiction under 28 U.S.C. § 1332. Defendants seek an order from this Court granting Defendants 90 days to do the following: inquire and take written and/or oral discovery into Plaintiff's residence; ask Allstate whether it considers Plaintiff's "resident" status on her insurance policy to be a contract violation or a basis for recession of the contract; and inquire into the basis of Plaintiff's claim that her actionable pecuniary losses exceed $75,000. (Id. at 2[2].)

Plaintiff filed a Response in opposition on May 29, 2019 (ECF 9, "Resp."). Plaintiff attached an unsworn Declaration in Haitian Creole as an exhibit to the Response (ECF 9-2, "Decl."). Attached to the unsworn Declaration are several exhibits: an English translation of

---

[2] Because the Motion does not include page numbers, the Court refers to the page numbers of the ECF filing.

Plaintiff's declaration, a copy of Plaintiff's Class R B1/B2 Visa evidencing Plaintiff's Haitian nationality, Plaintiff's passport, and copies of Plaintiff's airline itineraries reflecting her travel to/from the United States from 2016 to 2019 (Decl. Exs. A–D).

## IV. Legal Standard

### A. Rule 12(b)(1)

In considering a motion to dismiss under Rule 12(b)(1), the Court must first determine whether Defendants allege a facial or factual deficiency. See Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack concerns "'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of a plaintiff's claim to comport factually with the jurisdictional prerequisites.'" CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008) (quoting U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007)).

In this case, Defendants present a factual attack because the Motion challenges whether this Court has actual jurisdiction to hear the case by attaching a press release and asserting facts to counter Plaintiff's allegations, including that Plaintiff indicated that she was a "resident" of Philadelphia on her insurance policy. See Davis, 824 F.3d at 346 (noting that "a factual challenge[] attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts'" (quoting Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014))); CNA, 535 F.3d at 139 (noting that a factual attack "challenge[s] whether the District Court actually ha[s] subject matter jurisdiction based on the facts alleged"); but see Askew v. Church of the Lord Jesus Christ, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial.").

5

When considering a factual challenge, "the plaintiff will have the burden of proof that jurisdiction does in fact exist." Davis, 824 F.3d at 346 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen, 549 F.2d at 891. Where "a defendant contests any of the jurisdictional allegations as pled by the plaintiff," as Defendants do here, "the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence." McCann v. Newman Irrevocable Tr., 458 F.3d 281, 290 (3d Cir. 2006). "If there is a dispute of material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." Id.

### B. Diversity Jurisdiction Under 28 U.S.C. § 1332(a)(2)

Plaintiff has invoked diversity jurisdiction to obtain this Court's jurisdiction over the Complaint, which alleges only state law claims. Because Plaintiff is a citizen of Haiti, the only basis of diversity jurisdiction is 28 U.S.C. § 1332(a)(2).

Under § 1332(a)(2), a federal court has original jurisdiction over an action where the "matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of a state and citizens or subjects of a foreign state." § 1332(a)(2). However, "district courts shall not have original jurisdiction . . . between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." Id.

An individual is a "citizen[] of a state" if he or she is "domiciled in a particular state of the United States." Frett-Smith v. Vanterpool, 511 F.3d 396, 402 (3d Cir. 2008). A United States

6

citizen, living abroad, is not a "citizen[] or subject[] of a foreign state" who may sue or be sued in federal court under § 1332(a)(2). Id. at 400. Section 1332 requires complete diversity, meaning that "every plaintiff must be of diverse state citizenship from every defendant." In re Briscoe, 448 F.3d 201, 215 (3d Cir. 2006).

As the party invoking jurisdiction under § 1332, Plaintiff bears the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 395 (3d Cir. 2016). This burden "is not especially onerous." Id. When reviewing the allegations in the Complaint, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to satisfy dismissal." Id. (citation and internal quotation marks omitted). In applying the "legal certainty" test, "dismissal is appropriate only if the federal court is certain that the jurisdictional amount cannot be met." Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997) (quoting Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1995)). When undertaking this assessment, "[t]he temporal focus of the court's evaluation . . . is on the time that the complaint was filed." Auto-Owners Ins. Co., 835 F.3d at 395 (alteration in original) (quoting Suber, 104 F.3d at 583).

"[T]he question of whether a plaintiff's claims pass the 'legal certainty' standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims." Suber, 104 F.3d at 583. As a result, "[t]he court should not consider in its jurisdictional inquiry the legal sufficiency of [the plaintiff's] claims or whether the legal theory advanced by the plaintiff[] is probably unsound." Id. Thus, "the 'threshold to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(1) . . . is lower than that required to withstand a Rule 12(b)(6) motion.'" Suber, 104 F.3d at 583 (quoting Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir. 1981)). Under

Rule 12(b)(1), "a claim fails to invoke the District Court's jurisdiction only if it is 'wholly insubstantial and frivolous.'" Quinones-Velazquez v. Maroulis, 677 F. App'x 801, 803 (3d Cir. 2017) (quoting Lunderstadt, 885 F.2d at 70).

V. **Discussion**

  A. **Parties' Contentions**

   i. **Defendants' Motion to Dismiss**

In the Motion to Dismiss, Defendants argue that the Complaint fails to adequately plead Plaintiff's citizenship, as required to establish jurisdiction under § 1332(a)(2). (Mot. at 11.) According to Defendants, there is no complete diversity because although Plaintiff alleges that she is a citizen and resident of Haiti in the Complaint, she also referred to herself as a "resident" of the Fillmore Street property in Philadelphia in her insurance policy. (Id.) Defendants contend that if Plaintiff was not in fact a "resident" of Philadelphia when she executed the policy, Plaintiff may be civilly and/or criminally liable. (Id. at 13.)

Defendants further argue that although Plaintiff alleges the amount-in-controversy to be $75,496.20, it is really $66,738.98–below the $75,000 jurisdictional threshold–because the Complaint clearly alleges that only $66,738.98 was transferred from Allstate to Defendants. (Id. ¶ 11.) Defendants then contend that Plaintiff's settlement funds were fraudulently removed from Defendants' escrow account as part of an embezzlement scheme, citing a press release. (Id. ¶ 20; id. Ex. 1.) As a result, Defendants argue that because they were victims of embezzlement, this Court must exclude punitive damages from the amount-in-controversy. (Mot. ¶¶ 21–22.)

   ii. **Plaintiff's Response**

In the Response, Plaintiff first argues that this Court has jurisdiction under § 1332(a)(2) because she is a Haitian citizen domiciled in Haiti, not a United States citizen or a permanent

8

resident alien. (Resp. at 2.) Second, Plaintiff seeks to undermine Defendants' arguments as to the amount-in-controversy. Specifically, Plaintiff argues that Defendants should not be permitted to rely upon a press release concerning a fraudulent scheme perpetrated on People's Property to diminish the amount of damages that Plaintiff is entitled to recover. (Id. at 5.) Plaintiff contends that the Court cannot conclude, based on a press release, that there is a legal certainty that Plaintiff cannot recover more than $75,000. (Id.)

**B. Analysis**

As discussed above, Defendants contend that the Complaint must be dismissed for lack of subject matter jurisdiction because there are factual questions as to whether Plaintiff is a citizen of Haiti and whether the amount-in-controversy exceeds $75,000, as required by § 1332(a)(2). The Court addresses each argument in turn.

      **i.    Whether Plaintiff is a Citizen of Haiti under § 1332(a)(2)**

Under § 1332(a)(2), this Court does not have original jurisdiction over an action between "citizens of a state" and "citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." § 1332(a)(2). Here, the Complaint alleges that Plaintiff is a citizen and resident of the Country of Haiti. (Compl. ¶ 1.) Defendants argue that there is no complete diversity because Defendants Jones and People's-PA are citizens of Pennsylvania and Plaintiff referred to herself as a permanent "resident" of Philadelphia in her insurance policy. (See Mot. at 11–12.) In response, Plaintiff has submitted documentation indicating that from April 4, 2014 to April 3, 2019–the date that Plaintiff filed the Complaint–Plaintiff traveled to the United States from Haiti pursuant to a B1/B2 visa. (Decl. Ex. A.) Plaintiff has also submitted a copy of her Haitian passport, which was issued on February 17,

9

2017. (Id. Ex. B.) Neither party has attached Plaintiff's application for the insurance policy or the policy itself.

The parties have not cited, nor is this Court aware of, any precedential Third Circuit decisions addressing whether § 1332(a)(2) precludes suits between United States citizens and holders of B1/B2 visas who reside in the same state. However, district judges outside of the Third Circuit have determined that plaintiffs in the United States pursuant to B1/B2 visas are aliens for purposes of assessing diversity jurisdiction. See, e.g., Cordeiro v. Alves, No. 1:16-cv-23233-UU, 2016 WL 9348372, at *3 (S.D. Fla. Dec. 9, 2016) (denying a Rule 12(b)(1) motion to dismiss and stating that, in ruling on the motion, "the Court **should not** consider whether Plaintiff 'actually intend[s] to reside permanently in the United States' based on a temporary visa, such as a B1/B2 Visa" (alteration in original) (quoting Foy v. Schantz Schatzman & Aaronson, P.A., 108 F.3d 1347, 1349 (11th Cir. 1997))); Mor v. Royal Caribbean Cruises Ltd., No. 12 Civ. 3845(JGK), 2012 WL 2333730, at *2 (S.D.N.Y. June 19, 2012) (concluding that the plaintiff, who possessed a B1/B2 visa, was an alien under § 1332(a)(2), not a permanent resident); Abbott v. Good Shepherd Med. Ctr., No. Civ. 04-1273-JO, 2004 WL 2847903, at *3 (D.Or. Dec. 9, 2004) (denying a motion to dismiss on the basis of subject matter jurisdiction where the plaintiff possessed a B1/B2 visa).

The Court finds these decisions instructive and concludes that Plaintiff has presented evidence that she was a citizen of Haiti when she filed the Complaint, not a legal permanent resident of the United States domiciled in Pennsylvania. However, Defendants' Motion raises a possible factual issue as to whether Plaintiff can now assert diversity jurisdiction as a citizen and resident of Haiti if Plaintiff stated in her insurance policy application that she was a "resident" of the Fillmore Street property in Philadelphia. (See Mot. ¶¶ 2–5.) Without the benefit of a developed factual record, the Court cannot conclude that Plaintiff has sufficiently established the existence

10

of complete diversity of citizenship. See McCann, 458 F.3d at 290 (discussing the procedure to determine jurisdiction in the absence of an adequate factual record).

### ii. Whether Plaintiff's Damages Exceed the $75,000 Jurisdictional Minimum

Though the Court acknowledges a possible jurisdictional issue with respect to Plaintiff's citizenship, for purposes of the instant Motion, the Court proceeds to determine whether Plaintiff has established the $75,000 jurisdictional threshold.

As set forth above, to establish diversity jurisdiction under § 1332, the amount-in-controversy must exceed $75,000, exclusive of interest and costs. § 1332(a). Defendants argue that although the Complaint alleges the amount-in-controversy to be $75,496.20, the amount is actually below the $75,000 jurisdictional minimum because only $66,738.98 was transferred to Defendants. (Mot. at 12.) Defendants contend that $8,757.22 of the $75,496.20 was retained by Allstate. (Id.) Plaintiff, on the other hand, contends that Plaintiff's damages amount to at least $75,496.20 because Allstate only retained the $8,757.22 "on account of Plaintiff's insurance claim pending a supplemental claim payment." (Resp. at 4.) Plaintiff does not submit any documents in support of her damages.

Defendants urge this Court to consider the fact that Plaintiff cannot recover for contractual damages because she misrepresented her place of residence on her Fillmore Street insurance policy. (See Mot. at 5–6.) However, the Third Circuit has cautioned district courts against considering the legal sufficiency of a plaintiff's claims on a Rule 12(b)(1) motion. See Suber, 104 F.3d at 583 ("The court should not consider in its jurisdictional inquiry the legal sufficiency of [the plaintiff's] claims or whether the legal theory advanced by the plaintiff[] is probably unsound.") Even if Plaintiff cannot recover contractual damages, the Court cannot say that it is a

"legal certainty" that Plaintiff cannot recover at least $75,000 for non-contractual liabilities, such as Defendants' alleged violation of the UTPCPL.[3]

In Plaintiff's conversion, breach of fiduciary duty, participation theory, and UTPCPL claims (Counts II, III, IV, and V), Plaintiff asserts that she lost $75,496.20 when Defendants wrongfully refused to send Allstate's payments to Plaintiff and converted the funds for their own use. (Compl. ¶¶ 22–24, 37, 40, 47, 53, 61.) Though the Complaint alleges that Defendants only received $66,738.98, Count V alleges a violation of the UTPCPL, which provides for treble damages. See Krauss v. Steelmaster Buildings, LLC, No. CIVA 06-796, 2006 WL 3097767, at *2 (E.D. Pa. Oct. 27, 2006) (Baylson, J.) (citing 73 P.S. § 201-9.2 ("The court may, in its discretion, award up to three times the actual damages sustained . . . .")). Plaintiff also alleges that Defendants' failure to remit insurance proceeds forced Plaintiff to borrow more than $26,000 to repair the Fillmore Street property, though Plaintiff does not include that amount in the damages sought. (See Compl ¶ 29.)

The aiding and abetting claim against Jones (Count VI) also seeks "an amount in excess" of $75,000 plus punitive and treble damages. Defendants contend that this Court should not consider Plaintiff's requested punitive damages because, as indicated in the press release attached to the Motion, People's Property was a victim of embezzlement. (Mot. at 7–8.) Undermining Defendants' position, in the Third Circuit, "[a] claim for punitive damages must be considered in determining the amount in controversy unless the claim is 'patently frivolous and without foundation.'" Quinones-Velazquez, 677 F. App'x at 804 (quoting Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1993)). For example, a claim for punitive damages is "patently

---

[3] The Court notes that in Counts I, II, III, IV, and V, Plaintiff specifically seeks "consequential damages," which sound in contract, as opposed to compensatory damages. See Birth Ctr. v. St. Paul Cos., 787 A.2d 376, 390 n.1 (Pa. 2001) (Nigro, J., concurring).

12

frivolous" if punitive damages are unavailable as a matter of law. See Packard, 994 F.2d at 1046, 1048. Defendants have not referenced, nor is this Court aware of, any Third Circuit or Pennsylvania Supreme Court decisions stating that punitive damages are unavailable for aiding and abetting claims. As a result, though the Court does not make any determinations as to the potential merits of Plaintiff's claims, the Court cannot say that it is a "legal certainty" that Plaintiff cannot recover an amount that "exceeds the sum or value of $75,000." § 1332(a). That said, because Defendants have asserted facts countering Plaintiff's allegation that Defendants wrongfully withheld more than $75,000, the Court must give Plaintiff an opportunity to present evidence demonstrating jurisdiction. See McCann, 458 F.3d at 290.

## VI. Conclusion

Defendants' Motion to Dismiss will be held under advisement.

Because of the jurisdictional issues set forth above, the Court directs the parties to initially limit discovery to Plaintiff's ability to bring this action under § 1332 before the Court rules on the existence of subject matter jurisdiction.

An appropriate Order follows.

O:\CIVIL 19\19-1405 Laguerre v Peoples Prop Adjusters\19cv1405 Memo re MTD.docx

13